HAROLD LETCHER V. THE STATE.

No. 16509. Delivered April 4, 1934.
State's Rehearing Denied June 27, 1934.

594

The opinion states the case.

*Chas. C. Thompson,* of Colorado, Texas, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for selling beer; punishment, a fine of $25.00.

Appellant was charged by information, in the county court of Mitchell County, Texas, with selling beer containing in excess of one per cent alcohol by volume, and not more than three and two tenths per cent alcohol by weight,—it being further averred in the information that Mitchell County had by local option election held under the laws of the State of Texas, and in force at the time of taking effect of Section 20, Article 16 of the Constitution of the State of Texas, prohibited the sale of intoxicating liquors in said county,—since which election there has been no local election held in said county at which a majority of the voters of said county by their votes have declared it shall thereafter be lawful in said county to sell any vinous or malt liquors containing not more than three and two tenths alcohol by weight. To this, in addition to his plea of not guilty, appellant filed his exceptions to the information, and his plea to the jurisdiction of the court, on the ground that if guilty of any offense, as set out, same was and would be a felony, of which the county court of Mitchell County would have no jurisdiction. He further excepted to the information on the ground that there is now no law against selling the liquor referred to therein, in a county in which, by local option election, such sale had been prohibited, the reasons for this exception being that Arts. 666 and 667 P. C., were repealed by the recent amendment to our State Constitution adopted in August 1933, which appears at page 971, Acts Regular Session, 43rd Legislature.

We note these exceptions in inverse order. In the one last mentioned we think appellant in error, since it is specially provided in said constitutional amendment as follows: "And provided further that in all counties in the State of Texas and in all political subdivisions thereof, wherein the sale of intoxicating liquors had been prohibited by local option elections held under the laws of the State of Texas and in force at the time of the taking effect of Section 20, Article 16, of the Constitution of Texas, it shall continue to be unlawful to manufacture, sell, barter or exchange in any such county or in any such political subdivision thereof, any spirituous, vinous or malt liquors

or medicated bitters, capable of producing intoxication or any other intoxicant whatsover, unless and until a majority of the qualified voters in said county or political subdivision thereof voting in an election held for such purpose shall determine it to be lawful to manufacture, sell, barter and exchange in said county or political subdivision thereof vinous or malt liquors containing not more than three and two-tenths per cent (3.2%) alcoholic content by weight, and the provision of this subsection shall be self enacting."

As to the act of appellant, in the territory where done, if done,—we are of opinion that the law, both of the Constitution and State, is now the same as it was prior to the enactment of Chap. 116, Acts Regular Session, 43rd Legislature, and prior to the adoption of said last mentioned amendment to the Constitution.

As to the first exception above mentioned, we think appellant's plea must be sustained, and that it is decisive, and,—if the lower court was without jurisdiction,—any discussion of the further interesting questions herein raised would be but obiter dicta.

Section 1, Chap. 116, Acts Regular Session, 43rd Legislature in part is as follows:

"(a) The manufacture, sale and distribution of vinous or malt beverage containing one-half (½) of one per cent (1%) or more of alcohol by volume and not more than three and two-tenths per centum (3.2%) of alcohol by weight is hereby authorized within the State of Texas, subject to the terms and conditions herein imposed.

"(b) Upon and after the effective date of this Act (as provided in subsections (c) and (d) of Section 28 of this Act) in all counties in the State of Texas and in all political subdivisions thereof wherein the sale of intoxicating liquors had been prohibited by local option election held under the laws of the State of Texas and in force at the time of taking effect of Section 20, Article 16 of the Constitution of Texas, it shall continue to be unlawful to manufacture, sell, barter or exchange in any such county or any such political subdivision of said county any vinous or malt liquors containing in excess of one per cent (1%) alcoholic content by volume, unless and until a majority of the qualified voters in said county or political subdivision thereof voting at an election held for such purpose shall determine it to be lawful to manufacture, sell, barter or exchange in such county or in such political subdivision of said county any vinous and malt liquors containing not more than three

and two-tenths per centum (3.2%) alcoholic content by weight."

We are of opinion that under the provisions of the above act, and the averments of the information in this case, the county court of Mitchell County was without jurisdiction of the offense, if any, committed by appellant, and that such offense, if any, was a felony. So believing, we are constrained to hold that appellant's exception and plea to the jurisdiction should have been sustained.

The judgment of the county court is reversed and the prosecution ordered dismissed.

*Judgment reversed, and prosecution*
*ordered dismissed.*

ON STATE'S MOTION FOR REHEARING.

CHRISTIAN, JUDGE.—We are unable to reach the conclusion that articles 666, 667 and 689, Penal Code, are without effect as to the sale of vinous or malt liquor in territory where the local option prohibition law had been adopted and was in force at the time of the taking effect of section 20, article 16, of the Constitution of Texas. Prior to the adoption of the recent amendment to our Constitution, subsection (a) of section 20, article 16, provided, in part, as follows: "The manufacture, sale, barter and exchange in the State of Texas, of spirituous, vinous or malt liquors, or medicated bitters, capable of producing intoxication, or any other intoxicant whatever except for medicinal, mechanical, scientific or sacramental purposes, are each and all hereby prohibited."

Articles 666, 667 and 689, supra, were enacted pursuant to the prohibition contained in the Constitution, and were in effect throughout the State as a general law until the adoption of the recent amendment to the Constitution authorizing the sale, etc., of vinous or malt liquors containing not more than three and two-tenths per cent. of alcohol by weight in the territory designated and under the conditions stipulated in the amendment. Among other things, articles 666 and 667 prohibited the sale within the confines of the State of spirituous, vinous or malt liquors or medicated bitters capable of producing intoxication, or any other intoxicant; and, further, denounced as an offense the sale of spirituous, vinous or malt liquors or medicated bitters or any potable liquor, mixture or preparation containing in excess of one per cent. of alcohol by volume. In article 689 the penalty was fixed at confinement in the penitentiary for not less than one nor more than five years.

The amendment to subsection (a) of section 20, article 16,

of the Constitution reads, in part, as follows: "The manufacture, sale, barter or exchange in the State of Texas of spirituous, vinous or malt liquors or medicated bitters capable of producing intoxication, or any other intoxicant whatever except vinous or malt liquors of not more than three and two-tenths per cent (3.2%) alcoholic content by weight (except for medicinal, mechanical, scientific or sacramental purposes) are each and all hereby prohibited. The Legislature shall enact laws to enforce this Section, and may from time to time prescribe regulations and limitations relative to the manufacture, sale, barter, exchange or possession for sale of vinous or malt liquors of not more than three and two-tenths per cent (3.2%) alcoholic content by weight; provided the Legislature shall enact a law or laws whereby the qualified voters of any county, justice's precinct, town or city may, by a majority vote of those voting, determine from time to time whether the sale for beverage purposes of vinous or malt liquors containing not more than three and two-tenths per cent (3.2%) alcohol by weight shall be prohibited within the prescribed limits; *and provided further that in all counties in the State of Texas and in all political subdivisions thereof, wherein the sale of intoxicating liquors had been prohibited by local option elections held under the laws of the State of Texas and in force at the time of the taking effect of Section 20, Article 16, of the Constitution of Texas, it shall continue to be unlawful to manufacture, sell, barter or exchange in any such county or in any such political subdivision thereof, any spirituous, vinous or malt liquors or medicated bitters, capable of producing intoxication or any other intoxicant whatsoever, unless and until a majority of the qualified voters in said county or political subdivision thereof voting in an election held for such purpose shall determine it to be lawful to manufacture, sell, barter and exchange in said county or political subdivision thereof vinous or malt liquors containing not more than three and two-tenths per cent (3.2%) alcoholic content by weight,* * * *." (Italics ours).

The question is: Was it the intention of the legislature in framing the amendment, and of the people in adopting it, to continue in force in what is commonly termed dry territory, as described in the amendment, the inhibition and penalty of articles 666, 667 and 689, supra, relative to the sale of vinous and malt liquors? The answer is found in the language we have hereinbefore italicized. That the declaration that it shall continue to be unlawful to sell in the territory mentioned vinuous or malt liquors capable of producing intoxication was made in

view of the law as it existed at the time the recent amendment was adopted and was intended to extend in duration such law seems obvious. The words "continue to be unlawful" are deemed to have been deliberately employed to indicate the intention that the law then in effect should continue to operate in the described territory. Webster defines "continue" to mean, "to protract or extend in duration; to cease not; to carry onward or extend." See Grand Lodge of the United Brothers of Friendship and Sisters of the Mysterious Ten v. Massachusetts Bonding and Ins. Co., 25 S. W. (2d) 783.

Nor do we find anything in Chapter 116, General Laws passed by the 43rd Legislature at the Regular Session which militates against our conclusion. We quote the pertinent provisions of the act:

"SECTION 1. (a). The manufacture, sale and distribution of vinous or malt beverage containing one-half (½) of one per cent (1%) or more of alcohol by volume and not more than three and two-tenths per centum (3.2) of alcohol by weight is hereby authorized within the State of Texas, subject to the terms and conditions herein imposed."

"(b). Upon and after the effective date of this Act (as provided in subsections (c) and (d) of Section 28 of this Act) in all counties in the State of Texas and in all political subdivisions thereof wherein the sale of intoxicating liquors had been prohibited by local option election held under the laws of the State of Texas and in force at the time of taking effect of Section 20, Article 16 of the Constitution of Texas, *it shall continue to be unlawful to manufacture, sell, barter or exchange in any such county or any such political subdivision of said county any vinous or malt liquors containing in excess of one per cent (1%) of alcoholic content by volume, unless, and until a majority of the qualified voters in said county or political subdivision thereof voting at an election held for such purpose shall determine it to be lawful to manufacture, sell, barter or exchange in such county or in such political subdivision of said county any vinous and malt liquors containing not more than three and two-tenths per centum (3.2%) alcoholic content by weight.*" (Italics ours).

"SEC. 28. (a). None of the provisions of Title 80 of the Revised Civil Statutes, 1925, or of Title 2, (11) Chapter 7, of the Penal Code, shall have application to the manufacture, sale, possession, distribution, advertisement or transportation of vinous or malt beverages as herein defined in those counties or political subdivisions thereof wherein the manufacture, sale,

possession, distribution, advertisement and transportation of such beverages are legalized under the terms of this Act."

"SEC. 12. (j). If any person shall violate any provision of this Act whether specifically enumerated above or not,

"(k) He shall be guilty of a misdemeanor, and upon conviction shall be punished by a fine in the sum of not less than Twenty-five Dollars ($25.00) and not more than Five Hundred Dollars ($500.00), or by imprisonment in the County Jail not more than one year or by both such fine and imprisonment except when some other penalty is specifically provided by this Act, in which event the penalty specifically provided shall apply to the specific act or omission."

The remaining sections of the act deal mainly with licenses and provide the procedure for holding local option elections. Also regulations applicable to licensed dealers are set forth.

The converse of subsection (a) section 28 of the act would necessarily involve a declaration to the effect that the statutory provisions mentioned therein should have application in so-called dry territory. Chapter 7 mentioned in said section, embraces articles 666, 667 and 689, supra. Also the language we have italicized in quoting the said act manifests the intention of the legislature to restrict its application to what is commonly termed wet territory. It follows that the stipulation that it shall continue to be unlawful to sell vinous or malt liquor in dry territory cannot be taken as a prohibitory provision to which the penalty set forth in the act is referable, but must be considered as no more than a declaration to the effect that in so far as dry territory is concerned it was not the intention of the legislature to repeal or modify existing laws prohibiting the sale of vinous or malt liquor, nor the penalties attached thereto.

But counsel for appellant argues that our construction of the act does violence to section 28, article 1, of the Constitution, wherein it is provided that the power of suspending laws shall be exercised only by the legislature. The position is taken that articles 666 and 667, supra, were general statutes, and that, in holding that they are now applicable in dry territory as to the sale of vinous or malt liquor containing not more than three and two-tenths per cent. of alcohol by weight, we have placed the legislature in the attitude of authorizing the people, by the terms of Chapter 116, to suspend the operation of a general law. In support of this contention the case of Lyle v. State, 193 S. W., 680, is cited, wherein this court held that the legislature was without power to authorize the qualified voters of designated political subdivisions to determine by election that

the general law permitting the operation of pool halls should be suspended. If it should be conceded that the situation in the present appeal is analogous to that presented in the case of Lyle, counsel's contention should be sustained. In the cited case it is shown that there was no Constitutional provision authorizing local option on the subject of pool halls. Hence the general provision of the Constitution against the suspension of laws, except by the legislature, was applicable. On the subject of intoxicating liquor, the people, speaking through their Constitution, have adopted a rule different from the general provision mentioned. Under the terms of the amendment, it was the mandate of the people that they should have the power to suspend the operation of the laws in question. In providing a system of local option in Chapter 116, the legislature did not transcend Constitutional authority in permitting the voters in dry territory to suspend in the manner provided in the act the operation of articles 666, 667 and 689, supra, in so far as they relate to the sale of vinous or malt liquor containing not more than three and two-tenths per cent. of alcohol by weight. In Lyle's Case this court recognized the right of the people, by amendment to the Constitution, to draw to themselves the power to suspend the operation of a general law. In Ex Parte Meyer, 207 S. W., 100, in dealing with the power of the people to prohibit the sale of intoxicating liquor under the local option system as then authorized by the legislature pursuant to section 20, of article 16, of the Constitution, this court said: "The subject was made one of local self government within the control of the people of the localities named, to remain so until such time as the whole people of the State should by their vote change the Constitution."

Sometime after the foregoing announcement was made the Constitution was amended to prohibit the sale of intoxicating liquor throughout the State. In 1933 section 20 of article 16 was again amended to permit the sale of vinous or malt liquor containing not in excess of 3.2 per cent. of alcohol by weight, except in certain territory described in the amendment. Thus, it is seen that as to vinous and malt liquors of authorized alcoholic content the situation at this time is substantially the same as it was prior to the adoption of State-wide prohibition generally; that is to say, as to the liquors mentioned, the legislature, pursuant to Constitutional authority, has instituted a system of local option. The decisions construing the power of local self government by the people under the local option system as it heretofore existed have application here. For more

than forty years the power of local self government, in relation to the prohibition of the traffic in intoxicating liquors, has been recognized and sustained. See Ex Parte Meyer, supra, and authorities collated.

What we have said concerning the power to suspend the operation of a general law also disposes of the contention of counsel for appellant that our holding places the legislature in the attitude of delegating to the people legislative power to enact laws.

We deem it unnecessary to enter into an extended discussion of the contention that our holding has the effect of depriving citizens of the United States of the equal protection of the laws guaranteed by the 14th amendment of the Federal Constitution. Such contention is predicated upon the fact that, under our decision, the sale of vinous and malt liquor containing not more than 3.2 per cent. of alcohol by weight in so-called dry territory is a felony, whereas in what is commonly termed wet territory, the offense of selling said liquor without license or violating other regulations set forth in Chapter 116 is punishable as a misdemeanor. Prior to the absolute prohibition of the traffic in intoxicating liquor, the penalty for a violation of the provisions of the local option statutes had been changed from time to time. In the early days, after the Constitution of 1876 was adopted, the offense was a misdemeanor. Many political subdivisions prohibited the sale of intoxicating liquor under statutes denouncing the sale as a misdemeanor. In later years the penalty was enhanced. Under the amended statutes, other localities prohibited the traffic in such liquor. Prosecutions were instituted in districts adopting the law prior to the enhancement of the penalty. An effort was made to impose generally the enhanced penalty. For example, after it had been made a felony to sell intoxicating liquor in dry territory, the enhanced penalty was sought in those districts adopting the law when the offense was a misdemeanor. This court reached the conclusion that it was beyond the power of the legislature to impose upon a community that had theretofore adopted the local option law increased penalties and forfeitures which were not in effect at the time of such adoption. Lewis v. State, 58 Texas Crim. Rep., 351. The result was that there were many localities in the State in which a violation of the local option law constituted a misdemeanor, while in others it was a felony. In the case of Rippey v. State, 73 S. W., 15, it was contended that the local option law deprived citizens of the United States of the equal protection of the law. This contention was over-

ruled. See also Rippey v. State, 193 United States, 504. We quote from 33 Corpus Juris, page 508, as follows: "Prior to the adoption of the Eighteenth Amendment to the federal constitution, it had frequently been held that state statutes prohibiting the manufacture and sale of intoxicating liquors, or submitting the question of their sale to a popular vote under the local option system, or requiring dealers in such liquors to obtain a license for their sale, and vesting officials with a reasonable discretion in the selection of licensees, or imposing an occupation tax upon dealers and regulating the time and manner of their sales and the conduct of their business, do not violate the provisions of the Fourteenth Amendment to the constitution of the United States, since the right to engage in the sale of intoxicating liquors is not one of the privileges or immunities of citizens of the United States which the states are thereby forbidden to abridge, nor can such restrictive statutes be said to deprive persons of liberty or property without due process of law, nor, if not entirely arbitrary in their discrimination between persons, do they deprive anyone of the equal protection of the laws."

Many authorities are cited in the footnotes in support of the foregoing text.

A careful examination of the contentions urged in the motion leads us to the conclusion that the original opinion correctly disposed of the appeal.

The motion for rehearing is overruled.

*Overruled.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.